Michael SABO, Nicholas Wells, Juan Perez, Alan Pitts, Billy J. Talley, Aimee Sherrod, and Tyler Einarson on behalf of themselves and all other individuals similarly situated, Plaintiffs,

v.

The **UNITED STATES**, Defendant.

No. 08–899 C

United States Court of Federal Claims.

Filed 05/01/2013

Brad Fagg, Morgan, Lewis & Bockius LLP, Washington, D.C., for plaintiffs. James J. Kelley, II, Charles P. Groppe, Morgan, Lewis & Bockius LLP, Washington, D.C., Barton F. Stichman, Amy F. Fletcher, Na-

tional Veterans Legal Services Program, Washington, D.C., of counsel.

Douglas K. Mickle, Senior Trial Counsel, Bryant G. Snee, Deputy Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, Stuart Delery, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for defendant. Mary E. Meek, Major, Military Personnel Branch, Army Litigation Division, United States Department of the Army, Fort Belvoir, Va., John S. Goehring, Captain, General Litigation Division, United States Department of the Air Force, Joint Base Andrews, Md., Kathleen L. Kadlec, Lieutenant Commander, Office of the Judge Advocate General, General Litigation Division, United States Department of the Navy, Washington, D.C., of counsel.

Class Action; Post Traumatic Stress Disorder; Equal Access to Justice Act; Timeliness of Application for Fees, Expenses, and Costs; Final Judgment; Settlement Agreement.

## OPINION AND ORDER

GEORGE W. MILLER, Judge

On October 10, 2012, plaintiffs filed an application for fees and costs under the Equal Access to Justice Act ("EAJA") (docket entry 154). Defendant responded by filing a motion to dismiss plaintiff's petition for attorney fees and bill of costs ("Def.'s Mot.") (docket entry 159, Dec. 5, 2012). Defendant's motion challenges only the timeliness of plaintiffs' application. Defendant does not at this time challenge whether plaintiffs are otherwise entitled to fees, expenses, and costs. Defendant instead requests, if the Court denies this motion, that the Court grant defendant an additional twenty-eight days after the Court files this Opinion to respond regarding plaintiffs' entitlement to the fees, expenses, and costs they seek. On January 8, 2013, plaintiffs filed their response in opposition to defendant's motion ("Pls.' Opp'n") (docket entry 164). Defendant filed a reply in support of its motion on February 11, 2013 ("Def.'s Reply") (docket

entry 169). The Court held oral argument on April 3, 2013. For the following reasons, the Court hereby **DENIES** defendant's motion.

## I. Background[1]

On December 17, 2008, plaintiffs filed a class action complaint (docket entry 1) seeking disability retirement pay and benefits plaintiffs claim they were owed upon separation from the military. Plaintiff class consists of men and women who served in the wars in Afghanistan and Iraq and who now suffer from Post Traumatic Stress Disorder ("PTSD") as a result of active combat. First Am. Class Action Compl. ("FAC") ¶ 136 (docket entry 25, Sept. 2, 2009). Plaintiffs were separated from the military based, at least in part, on a finding of unfitness to serve due to PTSD. *Id.* ¶ 136. Specifically, plaintiffs alleged that the United States Department of the Army, the United States Department of the Navy, and the United States Department of the Air Force (the "Service Branches") failed to comply with applicable statutes and regulations when they separated plaintiffs from the military and assigned plaintiffs disability ratings of less than 50 percent for PTSD. *Id.* ¶¶ 2–3.

After several months of discussions between the parties, during which time the Court certified the class of plaintiffs (docket entry 33, Sept. 21, 2009) and approved the parties' proposed form of notice (docket entry 45, Dec. 18, 2009), the parties requested that the case be stayed for slightly more than one year to allow for expedited administrative proceedings. Joint Status Report & Req. for Stay (docket entry 46, Jan. 20, 2010). The Court stayed the case until February 3, 2011 and ordered the parties to file monthly status reports describing the status of the administrative review of plaintiffs' military records (docket entry 47, Jan. 21, 2010).

On January 28, 2011, plaintiffs filed a motion requesting that the Court lift the stay (docket entry 89) as well as a motion for summary judgment (docket entry 90). The Court granted plaintiff's motion to lift the

---

1. For a complete recitation of the facts of this case, see *Sabo v. United States*, 102 Fed.Cl. 619, 621–26 (2011).

stay (docket entry 93, Feb. 14, 2011). Before the Court could address plaintiffs' motion for summary judgment, however, the parties requested that the Court once again stay the case, this time so that the parties could negotiate a settlement. Joint Mot. to Stay (docket entry 99, Mar. 22, 2011). The Court stayed the case (docket entry 100, Mar. 24, 2011), and on July 15, 2011 the parties filed a settlement agreement (the "Settlement Agreement") (docket entry 113).

On December 22, 2011, the Court approved the Settlement Agreement between the United States and the class of plaintiffs in this case. 102 Fed.Cl. 619. The Settlement Agreement categorized class members to tailor relief to each group based on, among other factors, whether plaintiffs had received PTSD disability ratings, whether plaintiffs had received military review board decisions, and whether plaintiffs had been placed on the Temporary Disability Retirement List. Settlement Agreement ¶¶ 7–19. In general, the terms of the Settlement Agreement provide that the Service Branches will change class members' military records to reflect that they were assigned a 50 percent disability rating for PTSD. *Id.* ¶¶ 6, 16, 19.

The Settlement Agreement provides that the Court will maintain jurisdiction over each plaintiff's claim until that plaintiff's military records are corrected and his or her claim is dismissed:

> The parties agree that the Court will maintain jurisdiction of the claims brought by claimants listed in Exhibits A and B until the parties submit to the Court a joint status report that lists (in filings made under seal) the names of those plaintiffs whose military records have been changed pursuant to the agreed upon terms above, and as set forth in the Exhibits to this agreement. By submitting the list of names to the court under cover of these joint status reports, the parties further agree that these plaintiffs' claims can be dismissed from the case with prejudice, consistent with paragraph 2 of this agreement, and with a provision incorporating the

terms of this Settlement Agreement in the order of dismissal.

Settlement Agreement ¶ 20. The Settlement Agreement requires the parties to file a joint status report within sixty days of the Court's final approval of the agreement and every ninety days thereafter. *Id.*[2] Additionally, the parties agreed that "[n]othing in th[e] Settlement Agreement shall preclude Plaintiffs from making an application for fees or other applicable relief under [EAJA] nor from receiving an award pursuant to the EAJA and the government does not waive any defenses to any such EAJA application nor concede or admit any entitlement under EAJA, should such an application be made." Settlement Agreement ¶ 2.

Plaintiffs filed their application for fees and costs under EAJA on October 10, 2012. Defendant asserts that the Court should "dismiss" plaintiffs' application because it was filed more than thirty days after the Court approved the Settlement Agreement.

## II. Analysis

EAJA requires the party seeking an award of fees to file its application within thirty days of final judgment. 28 U.S.C. § 2412(d)(1)(B). The parties dispute whether there has been any "final judgment" in this case. Plaintiffs argue that there has been no final judgment because their claims have not been dismissed. Pls.' Opp'n 7–8, 10–11. Defendant responds that the Court will never be entering judgment because the remedy plaintiffs obtained in the Settlement Agreement is procedural rather than an immediate monetary award. Therefore, according to defendant's argument, the Court's approval of the Settlement Agreement was a final judgment for EAJA purposes. Def.'s Reply 7–8.

▆▆▆ EAJA's partial waiver of sovereign immunity must be "strictly construed." *Ardestani v. I.N.S.*, 502 U.S. 129, 137, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991). The technical aspects of the waiver, including the timing provisions, however, are "interpreted broadly" to avoid creating a "trap for the unwary."

---

2. The parties began submitting these reports after the Court's approval of the Settlement Agreement. It was not until April 29, 2013, however, that the parties filed a status report (docket entry 184) that included a list of plaintiffs whose claims could be dismissed.

*Impresa Construzioni Geom. Domenico Garufi v. United States*, 531 F.3d 1367, 1371 (Fed.Cir.2008) (quoting *Myers v. Sullivan*, 916 F.2d 659, 669 (11th Cir.1990)); *accord* H.R. Rep. No. 99–120(I), at 18 n.26 (1985), *reprinted in* 1985 U.S.C.C.A.N. 132, 146 n.269.

EAJA defines "final judgment" as "a judgment that is final and not appealable, and includes an order of settlement." 28 U.S.C. § 2412(d)(2)(G).[3] The Settlement Agreement contemplates that the parties will submit to the Court lists of plaintiffs whose military records have been corrected pursuant to the terms of the agreement. Settlement Agreement ¶ 20. The Court will then dismiss with prejudice the claims of those plaintiffs whose military records have been corrected. *Id.* Yet, at the time plaintiffs filed their application for fees, no such lists had been submitted to the Court. While the parties submitted their first such list on April 29, 2013, no plaintiff's

claim has yet been dismissed. Accordingly, the parties' only dispute is whether the Court's Opinion approving the Settlement Agreement constitutes a "final judgment" for EAJA purposes or whether no such final judgment has yet been entered.

■ There appears to be no prior case directly answering the question of when approval of a settlement agreement—while the court continues to maintain jurisdiction over the plaintiff's claims until they are dismissed pursuant to the terms of the agreement—is a final judgment for EAJA purposes.[4] Both parties agree, however, that "final judgment turns on 'whether any issues remain to be decided by the [C]ourt.'" Def.'s Reply 7 (quoting Pls.'s Resp. 10 (citing *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945))).[5]

■ Issues of implementation of the Settlement Agreement remain to be decided by

**3.** EAJA does not further specify what settlement agreements do or do not constitute final judgments. The House Report accompanying a 1985 amendment to EAJA, however, adds: "If a settlement is reached and the fee award is not part of the settlement, then the thirty-day period would commence on the date when the proceeding is dismissed pursuant to the settlement or when the adjudicative officer approves the settlement." H.R. Rep. No. 99–120(I), at 18 n.26. The parties dispute which of the two triggering events mentioned in the House Report—approval of the Settlement Agreement or dismissal of plaintiffs' claims pursuant to the Settlement Agreement— applies in this case.

**4.** This is not, however, the first time that circumstances similar to this case have arisen. In *Reich v. Walter W. King Plumbing & Heating Contractor, Inc.*, 98 F.3d 147, 150 (4th Cir.1996), the parties did not dispute the timeliness of the plaintiff's application for EAJA fees—including fees related to settled claims—filed eight months after partial settlement which required the court to retain jurisdiction over unsettled claims. In *Dunn v. United States*, the Third Circuit held that the EAJA clock started running upon entry of a consent judgment pursuant to which the court retained jurisdiction to enforce the terms of the agreed upon judgment. 775 F.2d 99, 105 (3d Cir.1985). That agreement, however, was in the form of a consent judgment, not a settlement agreement contemplating dismissal of plaintiffs' claims at a later date. *Id.* Additionally, the plaintiffs filed their fee petition within thirty days of the consent judgment. *Id.* at 104. *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1 (1st Cir.2011), also involved facts similar to those of this case. On September 18, 2008, the district court en-

tered a "final approval order" of the parties' settlement agreement. *Id.* at 7. The agreement provided that the district court would "retain jurisdiction to hear and adjudicate noncompliance motions." *Id.* The plaintiffs filed their motion for fees and costs on June 2, 2009. Brief of Defendants–Appellants, *Hutchinson*, 636 F.3d 1, (No. 10–1268), 2010 WL 5145936, at *12. The First Circuit treated 42 U.S.C. § 12205—which, like EAJA, requires a final judgment—as the operative statute under which the plaintiffs applied for fees. 636 F.3d at 8 n.1. The defendants argued only that the application was *too early*, not *too late*, because the court's approval order did not constitute a final judgment. *Id.* at 11.

**5.** The issue in *Catlin* was whether a decision was a "final judgment" for purposes of appealability, not an EAJA "final judgment." Appealability, however, also requires a "final judgment." *See Melkonyan v. Sullivan*, 501 U.S. 89, 95, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991) (discussing the traditional usage of "final judgment" as one that is "final and appealable"); *Rivera Sanchez v. Sec'y of Health & Human Servs.*, 786 F.Supp. 147, 148 (D.P.R.1992) (citing *Melkonyan*, 501 U.S. at 95, 111 S.Ct. 2157) (" 'Final judgment' under the EAJA is a judgment *rendered by a court* that terminates the civil action for which EAJA fees may be received."); *Black's Law Dictionary* 919 (9th ed. 2009) (defining "final judgment" as "[a] court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs (and, sometimes, attorney's fees)"). Of course, a judgment does not become final for EAJA purposes until any appeal is also completed or the time for an appeal has run. *Impresa*, 531 F.3d at 1369.

the Court. "[T]he parties agreed that this Court will retain jurisdiction over the claims [after approval of the Settlement Agreement] in order to *address any issues that may arise regarding the settlement's implementation.*" 102 Fed.Cl. at 625 (emphasis added). Indeed, the parties have been negotiating implementation issues raised in two motions to enforce the Settlement Agreement plaintiffs have filed (docket entry 167, Feb. 6, 2013; docket entry 173, Mar. 14, 2013). At a minimum, the Settlement Agreement requires that the Court must still dismiss plaintiffs' claims once those plaintiffs receive the relief required by the Settlement Agreement. Settlement Agreement ¶ 20.

Defendant's proposed treatment of the Court's approval of the Settlement Agreement as a final judgment would conflict with the general rule that dismissal of all claims is a prerequisite for a final judgment (for purposes of an appeal). *Silicon Image, Inc. v. Genesis Microchip Inc.*, 395 F.3d 1358, 1363 (Fed.Cir.2005) ("[E]ven in a settled case, a final judgment must obtain. In order to satisfy this requirement, the trial court must dismiss, with or without prejudice, all of the claims as a predicate to a final judgment before appellate jurisdiction may lie to challenge any matter relating to the settlement."). Accordingly, the fact that courts' approvals of voluntary dismissal agreements constitute final judgments for EAJA purposes does not conflict with the conclusion that the Court's approval of the Settlement Agreement in this case was not a final judgment. Defendant cites *Bryan v. Office of Personnel Management*, in which the Tenth Circuit held that the parties' voluntary dismissal started the thirty-day EAJA clock running. 165 F.3d 1315, 1320–21 (10th Cir. 1999). Unlike in *Bryan*, the Settlement Agreement in this case did not "terminate[ ] the civil action." *Id.* at 1321. Rather, it set out a procedure for eventual dismissal, and that procedure has not yet been completed. Settlement Agreement ¶ 20.

The parties dispute the significance of cases from other forums finding the thirty-day EAJA filing clock starts to run upon approval of a settlement agreement or other similar agreement. *See Jennings v. Brown*, 7 Vet.App. 201 (1994); *Application Under Holzbau*, ASBCA No. 33185, 88–2 BCA ¶ 20,797. Yet these cases show only that approval of *certain* settlement agreements can constitute a § 2412(d)(2)(G) final judgment. In both cases, final judgment, or the equivalent, was entered contemporaneously with approval of the parties' agreements. *Jennings*, 7 Vet. App. at 203; *Holzbau*, 88–2 BCA ¶ 20,797 (stating that "the Board's decision sustaining the appeal[ ] thereby approv[ed] the settlement, and finally dispos[ed] of the appeal"). Here, in contrast, the Court did not enter judgment or dismiss any claims when it approved the Settlement Agreement.

While the Court did not remand this case, the Court's conclusion that approval of the Settlement Agreement was not an EAJA final judgment is consistent with cases in which a court maintains jurisdiction during a remand to an agency. In Social Security disability benefits cases, the district court's remand order is a final judgment when the remand requires the district court to relinquish jurisdiction, *Shalala v. Schaefer*, 509 U.S. 292, 300, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), but not when the district court maintains jurisdiction during the remand. *Id.* at 300 n.4, 113 S.Ct. 2625. That the Settlement Agreement was not a final judgment is therefore consistent with treatment of remand orders in such cases.

Moreover, treating the Settlement Agreement as a final judgment would frustrate the purpose of EAJA. "Congress enacted EAJA ... 'to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government.'" *Scarborough v. Principi*, 541 U.S. 401, 406, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) (quoting H.R. Rep. No. 96–1005, at 9). If the Settlement Agreement were a final judgment, plaintiffs would be unable to recover fees that related to implementation of the settlement but occurred more than thirty days after the Court's approval. Yet the Court has already retained jurisdiction well beyond that time period. A period of unavailable fees would frustrate Congress's purpose of eliminating barriers to plaintiffs' legal representa-

tion in vindication of their rights. *Cf. Sullivan v. Hudson*, 490 U.S. 877, 890, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989) ("[W]e find it difficult to ascribe to Congress an intent to throw the ... claimant a lifeline that it knew was a foot short. Indeed, the incentive which such a system would create for attorneys to abandon claimants ... runs directly counter to long established ethical canons of the legal profession.").

Finally, defendant argues that the Court's conclusion that the Settlement Agreement ·was not a final judgment for EAJA purposes "effectively read[s] out the term 'settlement order' in the EAJA rule, which also would violate the canon of statutory construction that a statute should not be interpreted in a manner that would cause a term to become meaningless or 'render one part inoperative.'" Def.'s Reply 2–3 n.2 (quoting *Dep't of Revenue of Or. v. ACF Indus.*, 510 U.S. 332, 333, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994)). EAJA's definition of "final judgment" is "a judgment that is final and not appealable, and includes an order of settlement." 28 U.S.C. § 2412(d)(2)(G). Of course, approvals of *some* settlement agreements satisfy EAJA's definition of "final judgment." But it is not true that approval of *every* settlement agreement is a final judgment. *Hadad v. Scharfen*, No. 08–22606, 2010 WL 625297, at *2 (S.D.Fla.2010) ("It is incorrect to state that an order of settlement is, by definition, a 'final judgment' under the EAJA. The proper reading of 28 U.S.C. § 2412(d)(2)(G) is that an order of settlement can be a 'final judgment' under the EAJA, if it is otherwise final and not appealable."). The Court only finds here that approval of the Settlement Agreement was not a final judgment, not that approval of other settlement agreements could never produce final judgments.

Defendant argues in its reply brief that plaintiffs' application is premature and that the use of fees plaintiffs suggest may be barred by the Anti–Assignment Act. Def.'s Reply 8–10. These arguments were not raised in defendant's motion, which asserted that plaintiffs filed their application after EAJA's thirty-day deadline had expired. Def.'s Mot. 3–4. In its motion, however, defendant requested an extension of twenty-eight days after the Court files this Opinion to file "a detailed response addressing the merits of the Sabo plaintiffs' application for fees and bill of costs." *Id.* at 5. Defendant's requested extension is **GRANTED.** The Court will address these arguments, if defendant chooses to pursue them, upon consideration of whether plaintiffs are entitled to the fees, expenses, and costs they seek.

## CONCLUSION

Because there has been no final judgment in this case, plaintiffs' application for fees, expenses, and costs was not filed after the expiration of the thirty-day deadline of § 2412(d)(1)(B). Defendant's motion to dismiss is accordingly **DENIED.** The Court **ORDERS** defendant to file its response to plaintiffs' application for fees and costs by **Wednesday, May 29, 2013.**

**IT IS SO ORDERED.**